W. H. HOLLINGER *et al.* v. BOATMEN'S BANK *et al.*

**No. 13,684.**   (77 Pac. 263.)

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Fraudulent Conveyance of Undivided Interest by Heir.* The legal title to land occupied as a homestead descends, upon the death of the owner intestate, to his widow and children, who inherit thereby present and valuable interests which they cannot give away in fraud of their creditors.

2. ———— *Voluntary Conveyance by Insolvent Heir Out of Possession to the Mother in Possession Held Fraudulent.* A voluntary conveyance of his interest by a son not occupying the homestead to the widow who has continued to occupy it, which has the effect of defrauding his creditors, will be set aside at the suit of a creditor in a proper proceeding for that purpose, and a lien will be declared thereon in its favor where the antecedent proceedings have created it.

Error from Dickinson district court; O. L. MOORE, judge. Opinion filed June 11, 1904. Affirmed.

*G. W. Hurd,* and *T. E. Dewey,* for plaintiffs in error.

*C. S. Crawford,* and *R. H. Seeds,* for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: We have here another of the seemingly endless problems arising out of the permutations of human affairs relative to the homestead question. The plaintiff in error Anna M. Hollinger states the facts as follows, with which statement no fault is found:

"In July, 1900, J. S. Hollinger died intestate. At the time of his death he owned a farm of 160 acres in Dickinson county, Kansas, and occupied the same with his family as a homestead. He left surviving him as his heirs at law his widow, Anna M. Hollinger,

and seven children, of whom the plaintiff in error W. H. Hollinger is one. After the death of J. S. Hollinger, the widow, Anna M., continued to occupy the premises as a home with her two adult unmarried children, and she occupied the same continuously to the time of the trial of this case.

"Soon after the death of J. S. Hollinger, W. H. Hollinger, who was at the time in debt and insolvent, conveyed his interest in the homestead to his mother, Anna M. Hollinger. Such conveyance was in the nature of a gift, and without any other consideration than the natural affection existing between the mother and son.

"Some time thereafter the Boatmen's Bank, the defendant in error, one of the creditors of W. H. Hollinger, obtained a judgment against him in the district court of Dickinson county, Kansas, upon which an execution was duly issued and levied upon the undivided one-fourteenth interest in the homestead as the property of said W. H. Hollinger; and thereafter the Boatman's Bank commenced this action in aid of execution for the purpose of setting aside the deed of conveyance from W. H. Hollinger to his mother, and subjecting the undivided one-fourteenth interest in the homestead to the payment of this judgment."

Upon these facts the court rendered the following judgment:

"It is therefore by the court now here considered, ordered and adjudged that the deed of conveyance from the defendant W. H. Hollinger to the defendant Anna M. Hollinger, for an undivided one-fourteenth interest in and to the following-described real estate, situated in Dickinson county, state of Kansas (land described), is void as against the judgment lien of said plaintiff, and that said plaintiff has a first lien upon said undivided one-fourteenth interest in said real estate in the sum of $27,391.38, with interest thereon at the rate of eight per cent. per annum from the 8th day of September, A. D. 1902."

It is claimed that this judgment is erroneous be-

cause the real estate mentioned is the homestead of A. M. Hollinger, not that it was the homestead of the debtor, W. H. Hollinger. Upon the death of J. S. Hollinger, who at that time owned and occupied the land as his homestead, and who was the husband of Anna M. Hollinger and the father of W. H. Hollinger, the title thereto passed, under our statutes of descents and distributions, one-half to his widow and one-half in equal shares to each of his seven children. (*Dayton v. Donart*, 22 Kan. 256.) Neither constitutional nor statutory homestead provisions had anything to do with this devolution of title. The title to land is not the concern of these provisions. The homestead right grows out of a condition and is not an estate. By this descent of title the heirs of J. S. Hollinger took something of substance and presumably of value; of course, it went to them conditioned with all the encumbrances created by the ancestor or imposed by the law, but whatever went to W. H. Hollinger was subject, upon the termination of those conditions, to the payment of his debts. He could not find protection for this property for himself under any of the homestead provisions, either of constitution or statute, because he was not occupying it as a home. He could not, by its conveyance without consideration, put his mother in any better position than he himself occupied, so far as his creditors were concerned.

It must be noted that the questioned decree goes only to the extent of declaring void the deed of, and decreeing a lien upon, W. H. Hollinger's interest in the estate; it does not determine when or how that interest may be subjected to the satisfaction of the lien. Contention is made that if W. H. Hollinger's interest may be sold to satisfy such a lien the homestead right of the widow in the land would be de-

stroyed. That question is not in this case, and we are not called upon to decide it; no sale has yet been ordered or attempted; it may never be; at least, so as to interfere with any homestead right of the widow, if any she have. It is sufficient now to say that the interest in the land in question which W. H. Hollinger took upon the death of his father and as his heir was a valuable one, and something which he could not give away while indebted, with the effect to hinder, delay or defraud his creditors.

The judgment of the district court will be affirmed.

All the Justices concurring.