PETER HEINZ, *Appellant*, v. CONSUMERS LIGHT, HEAT AND POWER COMPANY, *Appellee*.

No. 16,075.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Evidence of the Existence of the Relation.* In an action against a gas company for damages for personal injuries resulting from an explosion of gas negligently allowed to escape from open gas jets it was shown that the company had municipal authority to supply gas to consumers in the city, and that it was its duty to place meters in buildings and apartments to be supplied with gas, free of charge; that application was made to the company to place a meter in an apartment, and within a day or two two men appeared with a meter to be placed in the apartment for which application had been made, and, after obtaining a key, entered the basement of the building and installed a meter. *Held*, that these facts justified an inference that the men who placed the meter were the employees of the gas company.

2. PERSONAL INJURIES — *Negligence of Defendant — Failure of Proof.* There was an explosion of gas which escaped from jets left open in an apartment. The evidence relating to the opening of the jets and allowing them to remain open is held to be insufficient to warrant an inference that the jets were negligently opened and left open by the employees of the gas company.

3. INSTRUCTED VERDICT—*Review of Ruling—Motion for a New Trial.* A motion for a new trial is necessary to a reëxamination of the facts in a case where a verdict for the defendant is rendered on the plaintiff's testimony by direction of the court. (*Darling v. Railway Co.*, 76 Kan. 893.)

Appeal from Shawnee district court; ALSTON W. DANA, judge. Opinion filed December 11, 1909. Affirmed.

*Z. T. Hazen,* and *R. H. Gaw,* for the appellant.

*James F. Meagher, Charles Blood Smith, Edwin Hedrick, jr.,* and *Samuel Barnum,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Peter Heinz against the Consumers Light, Heat and Power Company to recover damages caused by the alleged negligence of the defendant in leaving gas jets in one of the plaintiff's apartments open, thus allowing gas to escape therefrom which exploded and seriously injured the plaintiff. At the conclusion of the testimony offered in behalf of the plaintiff the court directed the jury to return a verdict in favor of the defendant, and of that ruling complaint is made.

There is a motion to dismiss because the case-made was not served in due time, upon the theory that no motion for a new trial is necessary for a review and that time to make and serve a case could not be extended by the filing of such a motion. A motion for a new trial was filed and denied, and time was given in which to make and serve a case. The case was served within the time given, but not within ten days from the return of the verdict. If the motion for a new trial was necessary, the case was served in good time; otherwise it was not. As the trial resulted in a verdict of the jury a motion for a new trial was necessary to a reexamination of the facts. This was determined in *Darling v. Railway Co.,* 76 Kan. 893, and hence the motion to dismiss is denied.

But one question is presented for review, and that is, Was there testimony upon which the jury might have found a verdict in favor of the plaintiff? From the evidence it appears that the defendant is engaged in

supplying gas for heat, light and power in Topeka, and under an ordinance of the city is required to furnish and place meters in all buildings to be supplied with gas, without charge. The plaintiff's flats had been recently erected, and consisted of three floors, with two apartments on each floor. When the plumbing was put in the building the pipes were tested and left in good condition. Another contractor supplied the gas fixtures in the flats, and when he had finished, which was about five weeks before the explosion, he inspected the fixtures and left them secure and in good condition. Only two of the apartments were occupied at the time of the explosion, but arrangements for renting others had been made, and, among them, one on the east side of the third floor had been rented to Mrs. Burgess. She had requested the defendant to put in a gas meter for that apartment, and Mrs. McAfee, who had rented apartments on the first floor and who was ready to move in, had made a like request. Within a day or two after these requests were made two young men appeared with meters and obtained keys from the plaintiff which admitted them to the basement and to the apartments for which the meters were to be installed. Shortly afterward the plaintiff went to the basement and saw the young men at work placing the meters. On the same morning two men called at the apartment opposite that of Mrs. Burgess, in which the explosion occurred, and spoke about putting in meters. The keys were returned to the plaintiff by the men about nine o'clock, and about half an hour afterward the plaintiff went into the McAfee apartments on the first floor and discovered that gas was escaping through an open jet, which he closed, but he did not examine the jets on any other floor. Just before one o'clock of that day the plaintiff entered the kitchen of the Burgess apartment, and when he had proceeded as far as the bathroom an explosion of gas occurred, but how it was ignited he was unable to say. A person who came to his aid found

two gas jets in the front rooms of the apartment open. The plaintiff, who held the keys to the building, had not been in that apartment on that day until the time of the explosion, and there is nothing to indicate that any one else had occasion to go into that apartment on that day. On the evening before there was a rainstorm, and the plaintiff went into the apartment and closed the windows to keep out the rain. Workmen had been there and had just finished putting in rail plates and picture molding, but there is nothing to show that they had handled or interfered with the gas fixtures. While the young men who placed the meters wore no badges, and there was no direct evidence that they were sent there by the defendant, it may be fairly inferred that they were its employees. It was the duty of the defendant to place meters in buildings and apartments free of charge. Applications for meters had been made, and apparently in response to the applications these men brought meters to the building, asked to be admitted, and put in the meters for the particular apartments which the defendant had been requested to supply.

The question remains, Were they guilty of the negligence which caused the explosion? While there is no direct evidence that the young men were in the Burgess apartment, it is argued that the facts proved are sufficient to warrant an inference that they must have been in the apartment and that they negligently left the gas jets open. As a basis for this view attention is called to the testimony that they had the keys to the apartment and were on the third floor on that morning; that the entering of the apartment was the only purpose for which the keys could have been procured; that their going in there must have been to observe whether the gas turned on through the meter they had placed had passed into the pipes of the apartment, or for some other purpose in connection with turning the gas into that apartment; that there was nothing to show that any one else opened the jets or had any occasion for

Heinz v. Light Co.

handling them, and that jets were left open in the Mc-
Afee apartment, for which another meter was set.
Some person, it is argued, must have turned the keys
to the jets and left them open, and the plaintiff insists
that the facts related warranted the presumption that
these employees of the company went into that apart-
ment, opened the jets and carelessly left them open,
and that the responsibility of the defendant for the
explosion was a question for the jury and not for the
court.

The testimony does not establish a *prima facie* case
against the defendant.  It does not appear that any one
saw these men in the apartment prior to the explosion,
nor is there any proof that they were seen to unlock
the door or attempt to enter the apartment.   If the
presumption that they were in there is indulged, there
is an absence of proof of what was done by them while
in the apartment.   There is nothing to show that they
inspected the plumbing or handled the gas fixtures,
much less negligently left them open.   To hold the de-
fendant the further presumption must be indulged that
after going into the apartment they not only did some-
thing to the fixtures but that they negligently left the
gas turned on.   It is contended that these men alone had
opportunity to open the jets, but even this can not be
safely said.   Tenants had been shown the apartment,
mechanics had been there and had just completed some
work in the apartment, and the plaintiff himself had
been in the apartment frequently after the fixtures had
been tested.  He was in the apartment on the night
previous to the explosion, but it does not appear that
he noticed the condition of the fixtures, and, besides, he
states that he can not smell escaping gas.   The only
evidence as to the condition of the jets related to a time
five weeks before the explosion, when the tests of the
fixtures were made, and there is no assurance that the
jets may not have been opened by others who were in
and out of the apartment.   There is more reason to in-

fer that some of the persons shown to have been in the apartment opened the jets than that they were opened by persons not shown to have ever entered it. There is nothing in the testimony showing any duty on the part of the defendant to inspect the plumbing throughout the apartment or to do anything with the fixtures when a meter is placed. Inspections had been made by those who put in the pipes and fixtures, and why should it be presumed that those who put in the meter should go over the entire system again or do more than test the connections where the meter was placed? Too many presumptions are necessary to connect the defendant with the explosion. The general rule is that a presumption must rest upon well-established facts and not upon a mere process of reasoning or another presumption. Here there must be a presumption that the men entered the apartment, another that after getting in they manipulated the fixtures, and still another that when they had finished they left the jets open and negligently allowed the gas to escape. To recover it devolved upon the plaintiff to show culpable negligence on the part of the defendant, and as his testimony falls short of proving a *prima facie* case of negligence by, and responsibility of, the defendant the district court rightly instructed a verdict for the defendant.

The judgment is affirmed.

MASON, J. (dissenting) : The testimony shows that gas was not turned into the Burgess apartment's house pipe until it was connected with the defendant's service pipe by the insertion between them of the meter. Whether or not the evidence afforded ground for a reasonable inference that the gas jets were turned on by the defendant's employees, I think it was at least a fair question to be submitted to the jury whether it was actionable negligence for these employees to connect the service pipe with the house pipe and turn gas into

the latter without seeing to it that the jets were properly turned off, inasmuch as they had been provided with keys to the Burgess apartment, manifestly in order that they might be enabled to do this very thing.

SMITH, J., dissents for the reasons stated by Mr. Justice Mason.